## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_53539-019_
(Inmate Number)

_Roland N. Pettengill_
(Name of Plaintiff)

_U.S.P. Canaan P.o. Box 300_
(Address of Plaintiff)

_Waymart PA 18472_

          **vs.**

_David J. Ebbert, E. Lindsey_

_R. Sudel, John Doe No.1_

_John Doe No.2, John Doe No3_
(Names of Defendants) _John Doe No.4_

    :
    :
    :
    :
    :

_3:12-cv-1340_
(Case Number)

**COMPLAINT**

FILED
SCRANTON
JUL 11 2012
PER_____
DEPUTY CLERK

**TO BE FILED UNDER:** _____ 42 U.S.C. § 1983 - STATE OFFICIALS

        ✓ 28 U.S.C. § 1331 - FEDERAL OFFICIALS

I.   **Previous Lawsuits**

    A.     If you have filed any other lawsuits in federal court while a prisoner please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

        _Pettengill v. Veasey PB-C-90-137 1990_

        _Judge Estelle. There is some more but I do not_

        _remember the full caption or anything_

II.   **Exhaustion of Administrative Remedies**

    A.     Is there a grievance procedure available at your institution?
        ✓ Yes     ____No

    B.     Have you filed a grievance concerning the facts relating to this complaint?
        ✓ Yes     ____No

        If your answer is no, explain why not _____

    C.     Is the grievance process completed?   ____Yes  ✓ No  _See attached_

II EXHAUSTION OF ADMINISTRATIVE REMEDIES CONT

I have not completed the grievance procedure because of my life being in imment danger, by there being a contract on me here at U.S.P. Canaan, because of me trying to prosecute an inmate for rapeing me at U.S.P. Victorville.

III  Defendants

A). Defendant David J. Ebbert is employed as the warden at U.S.P. Canaan, P.o. Box 400 waymart PA 18472, And is sued in his individual and official capacities.

B). Defendant E. Lindsey is employed as a unit manager at U.S.P. Canaan P.o. Box 400 waymart PA 18472, and is sued in his individual and official capacities.

C). Defendant R. Sudel is employed as an lieutant at U.S.P. Canaan P.o.Box 400 waymart PA 18472 and is sued in his individual and official capacities.

D). Defendant John Doe No.1 is employed as an official working in the Sis office at U.S.P. Canaan P.o. Box 400 waymart PA 18472, and is sued in his individual and official capacities.

E). Defendant John Doe No.2 is employed as an correctional officer at U.S.P. Canaan P.o. Box 400 waymart PA 18472 and is sued in his individual and official capacities.

III. Defendants Cont

F). Defendant John Doe No.3 is the Assistant warden over operations at U.S.P. Canaan P.o. Box 400 waymart PA 18472. And is sued in his individual and official capacities.

G). Defendant John Doe No.4 is employed as the Director of the federal Bureau of Prisons at 320 1st street N.W. Washington DC 20534, and is sued in his/her individual and official capacities.

H). At all times mentioned in this complaint each defendant acted under federal law.

IV. STATEMENT OF FACTS.

1). On January 18, 2012 Plaintiff was approached by one of the Sureano inmates nick named Pee wee who lived in cellhouse E-1 cell 204 at U.S.P. Canaan, and told that if he (Plaintiff) did not have his (Pee wee's) money that night at commissary that Plaintiff would have to give up some ass or get hurt real bad.

2). On January 18, 2012 after making a statement in the lieutants office Plaintiff was Placed in the special Housing unit (SHU) at U.S.P. Canaan under Protective Custody.

2-A

IV. STATEMENT OF FACTS CONT

3). On or about Febuary 3, 2012 Plaintiff was called out by his unit manager defendant Lindsey for an interview for his Plaintiff's Protective custody investigation.

4). During this interview Plaintiff made it known that he feared for his safety because of him oweing Peewee who lives in cellhouse E-1 cell 204 an serano gang member some money and was told by this inmate that if Plaintiff did not pay his money that Plaintiff would have to give up a shot of ass or get messed up.

5). On Febuary 10, 2012 while being in his cell in SHU at U.S.P. Canaan cell 214 Plaintiff overheard one of the inmates living next door in cell 213 talking on the range about having some paper work with Plaintiff's name on it stateing that Plaintiff was trxing to have an inmate E-Campbell who had raped Plaintiff at U.S.P. Victorville Prosecuted.

6). During this conversation this inmate stated quote ( that inmate Roland D. Pettengill who lives in cell 214 is trying to Press rape charges on an inmate E-Campbell for rapeing him at U.S.P. Victorville and that if he is ever caught up with, that he's to be delt with and whoever delt with him would be paid real good unquote).

2-B

IV. STATEMENT OF FACTS CONT

7). On Febuary 13,2012 Plaintiff sent defendants Ebbert, Lindsey, and John Doe No.1 an affidavit to these facts and requesting kept in Protective custody and single celled, but Plaintiff never heard or talked to anyone about this affidavit.

8). On Febuary 16,2012 while being in his cell in SHU at U.S.P. Canaan cell 214 Plaintiff overheard one of the inmates talking on the range about Plaintiff being a snitch and trying to have inmate E. Campbell prosecuted for rapeing me while I was at U.S.P. Victorville and that if I'm ever caught up with that I'm to be delt with to the fullest extent.

9). On Febuary 20,2012, Plaintiff sent an affidavit to defendants Ebbert, Lindsey, and John Doe No.1 to these facts, to be single celled and kept in Protective custody, but Plaintiff never talked or heard from anyone about this affidavit.

10). On March 15,2012 Plaintiff once again sent defendants Ebbert, Lindsey, John Doe No.1 and Sudel an affidavit concerning all of these threats to his Plaintiff's safety, and requesting to be kept in Protective custody and single celled, but Plaintiff never talked or heard anything about this affidavit.

2-C

IV. STATEMENT OF FACTS CONT

11). On march 18, 2012, after the lunch meal Plaintiff overheard some inmates talking on the range about me being a snitch.

12). During this conversation it was brought up about Plaintiff trying to Press rape charges against inmate E. Campbell for rapeing him while at U.S.P. Victorville, and that if I'm ever caught up with that I'm to be hurt real bad, and that whoever done this would get $250.00.

13). On march 19, 2012 Plaintiff sent defendants Ebbert, Lindsey, and John Doe No.1 an affidavit stateing this fact to them, and requesting to be single celled as well as transfered to a Prison with a Protective custody unit, but Plaintiff never talked or heard anything about this affidavit.

14). On or about march 27, 2012 Plaintiff was ordered back into general Population, but he refused because of him being in fear of being assaulted in general Population because of the contract on him, and was written a disciplinary for refusing to Program.

15). On April 25, 2012 Plaintiff was again ordered back into general Population in which he went in order to keep from being wrote up.

2-d

IV. STATEMENT OF FACTS CONT

16). Upon Plaintiff exiting the SHU on his way to the laundry he saw defendant Sudel and told him (Sudel) that he Plaintiff feared for his safety in general population and that he was requesting protective custody, but defendant Sudel refused this request to Plaintiff, and stated that he (Sudel) did not care what happened to Plaintiff.

17). After getting dressed out in the laundry and entering the main hallway Plaintiff attempted to go to the lieutant's office, so he could request protective custody, because of him hearing some inmates in the laundry talking about me being attacked and messed up in my cellhouse later on, but was denied this option by defendant John Doe No.2, and other Correctional personell infront of the Dining hall.

18). After entering my assigned cellhouse E-1 Plaintiff was approached by an Aryan Brotherhood gang member and questioned about pressing rape charges on the inmate that raped me at U.S.P. Victorville, in which Plaintiff stated that he did not know what he was talking about.

19). At this time this inmate showed Plaintiff an affidavit to this effect with Plaintiff's signature on it and commenced to hit and kick me with his fists and

2-E

IV. STATEMENT OF FACTS CONT.

feet. Plaintiff Sustained a busted lip and numerious other bruises and since this time has had problems with bluryness in his left exe.

20). Once this inmate stopped assaulting Plaintiff, he told Plaintiff to go back into protective custody and to in noway come back to general population at U.S.P. Canaan.

21). At this point and time Plaintiff went to the officers booth and told the officer working cellhouse E-1 that I was requesting protective custody, and he reported this to his supervisor.

22). After this officer had contacted his supervisor Plaintiff was told that if he could not give this inmates name or physically identify him, that he would not be placed in protective custody.

23). At this time Plaintiff stated that he did not know this inmates name, but he was the last person standing in the doorway of my assigned cell 216.

24). At this time there was a bunch of staff show up at cellhouse E-1, and at this time with the whole cellhouse looking on Plaintiff was shown the inmates picture card where it would be well known that I told them that it was him who assaulted me.

2-F

IV. STATEMENT OF FACTS CONT

25). At this time I was escorted back to SHU by defendant Sudel, where I was placed back in my old cell under protective custody.

26). On June 5, 2012 plaintiff's cellmate inmate Lopez-Marquez REG#76230-198 commenced to beat on me with his fists, because of him finding out about plaintiff trying to prosecute the inmate who had raped plaintiff at U.S.P. Victorville.

27). From June 5, 2012 to June 11, 2012, plaintiff sent both the first and second shift SHU lieutents copouts requesting to be seperated from inmate Lopez-Marquez REG#76230-198, but each request was denied.

28). On or about June 6, 2012 during his rounds on range C-upper in SHU at U.S.P. Canaan plaintiff personally stoped defendant Sudel and gave him a copout requesting to be seperated from inmate Lopez-Marquez REG#76230-198, because of this inmate beating on plaintiff.

29). The only way plaintiff was finally able to get moved out of the cell with inmate Lopez-Marquez #76230-198 was to cut his (plaintiff's) wrist on June 11, 2012.

30). On June 11, 2012 there was pictures taken of my chest being bruised from where inmate Lopez-Marquez REG#76230-198 had hit me in the chest area. Plaintiff was then placed in an obeservation room in the infirmary

IV. STATEMENT OF FACTS CONT
at U.S.P. Canaan under Sucide weatch where he
Stayed until the next day when he was taken back
to SHU.

31). On June 12, 2012 Plaintiff was taken back to SHU
from the infirmary at U.S.P. Canaan and upon him
entering SHU was told that he was being Placed back
with my old cellmate inmate Lopez-Marquez REG#
76230-198.

32). At this Point and time Plaintiff stated that he
Could not cell with this inmate and requested to see
a lieutant.

33). Upon Plaintiff talken to lieutant Edwards and
explaining that inmate Lopez-Marquez REG# 76230-198
had been beating on Plaintiff and that this was
why Plaintiff had cut his wrist and being examined
by PA-C Kaiser for bruises and marks Plaintiff
was told by lieutant Edwards that he would be Placed
in another cell.

34). About 15 minutes later Plaintiff was taken to
cell 157 on C-Lower range in SHU and Placed in the
cell with inmate Frank Cardona #40710-074.

35). About 5 minutes after the officers left there
was some inmates on the range stated talking about
me trying to have an inmate Prosecuted for rapeing
me while at U.S.P. Victorville.

2-H

IV. STATEMENT OF FACTS CONT

36). Upon information and belief Plaintiff is not the only inmate who has had problems being protected at U.S.P. Canaan.

IVA  Legal Claim

37). Plaintiff realleges and incorporates by reference paragraphs 1 through 36 of the statement of facts.

38). The actions of defendants as stated in paragraphs 1 through 36 of the statement of facts violated Plaintiff's rights and constituted denial of due process of law and cruel and unusual punishment in violation of the 5th and 8th amendments to the U.S. Constitution.

39). The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

2-I

## V.   Relief

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

1.   A declaration that the acts and omissions described herein violated Plaintiffs rights under the constitution of the United States

2.   Compensatory damages in the amount of $15,000.00 against each defendant, jointly and severally.

3.   Punitive damages in the amount of $35,000.00 against each defendant.

Signed this _25th_ day of _June_ ,20_12_.

_Roland D. Pettengill_
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

_6/25/2012_
(Date)

_Roland D. Pettengill_
(Signature of Plaintiff)

3

V. RELIEF CONT

4). A Preliminary and Permant injunction ordering defendants David J. Ebbert, Lindsey, Sudel and John Doe No. 4 to:

A). Transfer Plaintiff to either U.S.P. Tucson in Arizona or U.S.P. Coleman 2 in Flordia, for the duration of his prison sentence.

B). To open an institution for strictly protective custody cases.

C). To single cell Plaintiff while he's at U.S.P. Canaan.

5). A jury trial on all issues triable by a jury.

6). Appointment of counsel to represent Plaintiff

7). Plaintiff's Costs in this suit.

8). And additional relief this court deems, just proper and equitable

3-A

**FORMS TO BE COMPLETED BY PRISONERS FILING A CIVIL RIGHTS COMPLAINT
UNDER 42 U.S.C. § 1983 or 28 U.S.C. § 1331**

<u>COVER SHEET</u>

**THIS COVER SHEET CONTAINS IMPORTANT INFORMATION ABOUT FILING A COMPLAINT AND YOUR OBLIGATIONS IF YOU DO FILE A COMPLAINT.  READ AND COMPLETE THE COVER SHEET BEFORE YOU PROCEED FURTHER.**

**************************************************************************************

The cost for filing a civil rights complaint is $350.00.

If you do not have sufficient funds to pay the full filing fee of $350.00 you need permission to proceed *in forma pauperis*.  However, the court will assess and, when funds exist, immediately collect an initial partial filing fee of 20 percent of the greater of:

      1)     the average monthly deposits to your prison account for the past six months; or

      2)     the average monthly balance in your prison account for the past six months.

Thereafter, the institution in which you are incarcerated will be required to make monthly payments of 20% of the preceding month's deposits credited to your account until the entire filing fee is paid.

CAUTION: YOUR OBLIGATION TO PAY THE FULL FILING FEE WILL CONTINUE REGARDLESS OF THE OUTCOME OF YOUR CASE, EVEN IF YOUR COMPLAINT IS DISMISSED BEFORE THE DEFENDANTS ARE SERVED.

**************************************************************************************

      1. You shall file a complaint by completing and signing the attached complaint form and mailing it to the Clerk of Court along with the full filing fee of $350.00. (In the event attachments are needed to complete the allegations in the complaint, no more than three (3) pages of attachments will be allowed.) If you submit the full filing fee along with the complaint, you DO NOT have to complete the rest of the forms in this packet.  Check here if you are submitting the filing fee with the complaint form. ____

      2. If you cannot afford to pay the fee, you may file a complaint under 28 U.S.C. § 1915 without paying the full filing fee at this time by completing the following: (1) Complaint Form; (2) Application To Proceed In Forma Pauperis; and (3) Authorization Form. <u>You must properly complete, sign and submit all three standard forms or your complaint may be returned to you by the Clerk of Court.</u>  Check here if you are filing your complaint under 28 U.S.C. § 1915 without full prepayment of fees. ✓

Please Note:  If your case is allowed to proceed and you are awarded compensatory damages against a correctional facility or an official or agent of a correctional facility, the damage award will first be used to satisfy any outstanding restitution orders pending.  Before payment of any compensatory damages, reasonable attempts will be made to notify the victims of the crime for which you were convicted concerning payment of such damages.  The restitution orders must be fully paid before any part of the award goes to you.

**DO NOT DETACH THE COVER SHEET FROM THE REST OF THE FORMS**



RECEIVED
SCRANTON

JUL 1 1 2012

MARY E. D'ANDREA, CLERK

Per _____ DEPUTY CLERK